144 So.2d 813 (1962)
James T. SHARER, Petitioner,
v.
HOTEL CORPORATION OF AMERICA, Consolidated Mutual Insurance Company, and Florida Industrial Commission, Respondents.
No. 31392.
Supreme Court of Florida.
September 21, 1962.
*814 Miller, Cone, Owen, Wagner & Nugent and Granvel S. Kirkland, West Palm Beach, for petitioner.
Howard N. Pelzner, Miami, Burnis T. Coleman and Patrick H. Mears, Tallahassee, for respondents..
HOBSON, Jr., Circuit Judge.
Petitioner has filed his petition for Writ of Certiorari contending that the Full Commission erroneously reversed the order of the Deputy Commissioner which found the petitioner to have a permanent partial disability of 59 per cent. of the body as a whole and further finding that the petitioner was entitled to the maximum rate of compensation of $42.00 per week.
The rate of compensation was based on petitioner's monthly salary of $200.00, plus a finding by the Deputy that the reasonable value of meals furnished to the petitioner was $28.00 per week.
We will first dispose of the question of the petitioner's average weekly wage. The Full Commission reversed the Deputy on the ground that it does not appear from the record that there is competent substantial evidence which accords with logic and reason upon which the Deputy could have based his finding of $28.00 per week as the reasonable value of the means. We hold that the Full Commission erred and that there is competent substantial evidence in the record in support of the Deputy's finding which, in fact, was not even rebutted by the respondents after the Deputy gave respondents ample opportunity to present evidence on this point by deposition.
There seems to be no controversy as to the factual situation in the instant case. In 1950 petitioner claimant, a 57-year old male with an eighth grade education, had his left hand amputated about 7 inches below the elbow. At the time he was hired by the employer (one of the respondents herein) it was known by said employer that petitioner had lost his left hand. On February 17, 1960, while operating an ice cube cutting machine for his employer, the petitioner sustained injury to his right hand. The Deputy found that petitioner had, as a result of this accident, a permanent partial disability of 40 per cent. of the right hand. The carrier was voluntarily paying petitioner on the basis of a 40 per cent. permanent disability of the right hand. The Deputy held that under Section 440.15(5) (d) (2), Florida Statutes 1959, F.S.A., the injury to petitioner's right hand merged with the pre-existing permanent physical impairment, to-wit, amputation of the left hand, to cause a permanent disability which is materially and substantially greater than that which resulted from the injury to the right hand alone, and he established the petitioner's compensable disability under said statute at 59 per cent. of the body as a whole.
*815 The petitioner has not cited nor have the respondents directed our attention to any Florida case factually similar to the instant suit which has dealt with Section 440.15(5) (d) (2), Florida Statutes 1959, F.S.A., nor has our independent research disclosed such a case.
Section 440.15(5) (d) (2), Florida Statutes 1959, F.S.A., provides as follows:
"Permanent disability after other permanent physical impairment. If an employee who has a total or partial loss or loss of use of one hand, one arm, one foot, one leg or one eye, or who has other permanent physical impairment incurs a subsequent permanent disability from injury or occupational disease arising out of and in the course of his employment which merges with the pre-existing permanent physical impairment to cause a permanent disability that is materially and substantially greater than that which would have resulted from the subsequent injury or occupational disease alone, the employer shall in the first instance pay all benefits provided by this chapter, but such employer shall be reimbursed from the special disability trust fund created by this paragraph for all compensation for permanent disability paid in excess of that allowed for such injury or occupational disease when considered by itself and not in conjunction with the previous permanent physical impairment." (Italics supplied.)
Petitioner argues, and we agree, that the facts in the instant case come squarely within Section 440.15(5) (d) (2), Florida Statutes 1959, F.S.A., and that said section is clear, concise, and unambiguous.
The respondents have taken the position that since the prior loss of petitioner's left hand is an injury to a scheduled member, and that the accident giving rise to this claim only involved injury to a scheduled member, in order for the petitioner to receive benefits over and above those to which he is entitled for disability arising from the second injury alone, the petitioner must be permanently and totally disabled. To hold in conformity with this position would result in nullifying Section 440.15(5) (d) (2), Florida Statutes 1959, F.S.A.
Larson speaking in his disquisition on workmen's compensation law relative to the same position taken by the respondents has this to say:
"* * * This view appears to be unduly literal. The section, read in the light of the history and purpose of the legislation, certainly contains a strong implication that the `materially and substantially greater disability' referred to is one which would be accompanied by commensurate compensation, whose increased amount is the reason for relieving the employer of part of the burden." Larson's Workmen's Compensation Law, Vol. 2, Sec. 59.34, page 65.
This expression by Larson is even more persuasive when it is noted that he is discussing the workmen's compensation law of the State of New York from which our workmen's compensation law, as to the special disability fund provisions, was modeled. Workmen's Compensation Law, 1959 Changes. James T. Vocelle, 33 Fla.Bar Journal, page 556 (July 1959).
It is further contended by the respondents that subparagraph 5 of Section 440.15(5) (d), Florida Statutes 1959, F.S.A., which reads:
"Legislative intent. It is the purpose of this paragraph to encourage the employment of the physically handicapped by protecting employers from excess liability for compensation for permanent disability when an injury to a handicapped worker merges with his pre-existing permanent physical impairment to cause a greater disability than would have resulted from the injury alone. It shall not be construed to create or provide any benefits for injured *816 employees or their dependents not otherwise provided by this chapter. The entitlement of an injured employee or his dependents to compensation under this chapter shall be determined without regard to this paragraph, the provisions of which shall be considered only in determining whether an employer or carrier who has paid compensation under this chapter is entitled to reimbursement from the special disability trust fund."
precludes the award of compensation to this petitioner or any claimant based on subsection (d) of Section 440.15(5). Respondents say that Section 440.15(d) (1), (2) and (3) cannot be construed to provide any benefits for injured employees and can be used only to determine whether an employer or carrier is entitled to reimbursement from the Special Disability Fund. At first glance this position seems to be well taken. However, after a careful, painstaking dissection of the Workmen's Compensation Statute and consideration thereof in the light of the overall legislative purpose we hold that this contention must fail.
Section 440.15(5) (c) states as follows:
"The fact that an employee has suffered previous disability or received compensation therefor shall not preclude him from benefits for a later injury nor preclude benefits for death resulting therefrom; but in determining compensation for the later injury or death his average weekly wages shall be such sum as will represent his earning capacity at the time of the later injury, provided, however, that an employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability except as hereinafter provided in paragraph (d) of this subsection." (Italics supplied.)
Upon reading Section 440.15(5) (c), which excepts paragraph (d), and Section 440.15(5) (d) (2) and (5), it is apparent that the latter two subsections are in conflict and cannot be reconciled.
Section 440.15(5) (c) confines an employee, who has a previous disability and later suffers a second compensable injury, to benefits for the second injury when considered by itself and not in conjunction with the previous disability. This is commonly known as an apportionment statute. However, an exception is contained in Section 440.15(5) (c) to this manner of determining benefits due the employee, said exception being paragraph (d) of Section 440.15(5), which paragraph is, in accordance with Section 440.15(5) (d) (5), not to be used in determining benefits due the employee. In effect, what we have is Section 440.15(5) (c) saying that the employee is not entitled to benefits for the combined disabilities except as provided by Section 440.15(5) (d) (1), (2) and (3). Then we have Section 440.15(5) (d) (1), (2) and (3) setting forth the conditions under which an employee is entitled to benefits for the combined disabilities. Then along comes Section 440.15(5) (d) (5), which was enacted subsequently and says that paragraph (d) is not to be considered in determining benefits. If paragraph (d) is not used to determine the compensation due an employee, Section 440.15(5) (c) would be controlling in all cases where an employee with a previous disability sustained a subsequent compensable injury and under no circumstances would such an employee be entitled to compensation other than for the disability resulting from the second injury alone. This we do not think, from a careful analysis of the entire statute, is the proper construction or the intent of the legislature.
We recognize the fact that as a general rule in cases of conflicting provisions in the same statute or in different statutes the last expression of the legislative will, in point of time or order of arrangement, *817 prevails. We find, however, in this case that, rather than the rule, the well recognized exception thereto is applicable. The exception to the rule is set forth in Sams v. King, 18 Fla. 557; Hall v. State, 39 Fla. 637, 23 So. 119, and State ex rel. Johnston v. Bessinger, 155 Fla. 730, 21 So.2d 343. In effect the exception, as declared by this Court, is that:
"* * * where the last sentence in one section of a statute is plainly inconsistent with the preceding sentences of the same section and preceding sections which conform to the legislature's obvious policy and intent such last sentence, if operative at all, must be so construed as to give it effect consistent with such other sections and part of sections and with the policy they indicate."[1] (Italics supplied.)
We look to Section 440.15(5) (d) (2) to determine the benefits due the petitioner herein because, although in point of time or order of arrangement said section is prior to the section which creates the conflict heretofore found to exist, a thorough study and comprehensive analysis of Section 440.15 convinces us that Section 440.15(5) (d) (2), when considered in connection with the exception contained in Section 440.15(5) (c), conforms to the legislature's obvious policy and intent and that Section 440.15(5) (d) (5) does not so conform but indeed is antithetical thereto.
Actually the very purpose for which the Special Disability Fund was created would be disannulled were we to adopt the construction given to Section 440.15(5) (d) (2) and (5) by Respondents. This is true because the intended use of the Special Disability Fund was for reimbursement to the employer of the "excess" after, and only after, he has paid the employee the "excess of that allowed for such injury or occupational disease when considered by itself and not in conjunction with the previous permanent physical impairment." (Italics supplied.)
It should never be presumed that the legislature intended to enact purposeless and therefore useless, legislation. Legislators are not children who build block playhouses for the purpose, and with the gleeful anticipation, of knocking them down. It would be the heighth of absurdity to assume that the legislature intentionally prescribed a formula which creates the need for a Special Disability Fund[2], and in the next breath deviously destroyed its own handiwork  thus making a mockery of the intended beneficent purpose of the Special Disability Fund itself.
As everyone knows there was a simple, direct method of accomplishing the end result for which Respondents contend, to-wit: Express deletion or expurgation by amendment in whole or in part of those sections of the statute which provide the "excess" compensation or additional benefits for the employee and, since there would then be no use to which the Special Disability Fund could be put, include it also in such repealing amendment. We cannot be persuaded that a majority of the legislators designedly used an indirect, unusual and abnormal procedure. It suggests either inadvertence or cabal. Neither should be permitted to defeat the legislative will gleaned from a studious analysis of the Florida Workmen's Compensation Law in the light of the overall salutary objectives which undoubtedly motivated its enactment.
We hold that under the facts of this case the Deputy Commissioner did not err in determining, under Section 440.15(5) (d) (2), Florida Statutes 1959, F.S.A., that the petitioner who had lost his left hand prior to the second accident subsequently incurred *818 a permanent disability from injury arising out of and in the course of his employment which merged with the pre-existing physical impairment to cause a permanent disability that is materially and substantially greater than that which resulted from the subsequent injury alone.
We believe the conclusion which we reach herein is not only logical and sound, but is certainly proper when appropriate consideration is given to the admonitions, contained in the long line of cases handed down by this Court, to the effect that our Workmen's Compensation Act should be liberally construed and all doubts resolved in favor of the claimant.
Mr. Justice Thornal succinctly outlined our policy when, in the case of Wick Roofing Company v. Curtis, Fla. 1959, 110 So.2d 385, 387, he said:
"This court has consistently construed the Workmen's Compensation law liberally in order to accomplish the beneficent purposes and objectives implicit in legislation of this type. We have on occasions held that if the statute permits divergent interpretations, one of which is favorable to the employee and the other unfavorable, we will adopt the interpretation most favorable to the employee."
The Deputy was correct in awarding the claimant permanent partial disability based on a rating of the body as a whole, which he established from competent and substantial evidence in accord with logic and reason, in the amount of 59 per cent.
The Full Commission in its order properly corrected two obvious errors made by the Deputy Commissioner appearing on the face of his order, one of which was typographical  the other mathematical. The first of these errors was the date of maximum medical improvement which should read May 2, 1960, instead of May 2, 1959. The mathematical misprision occurred in the Deputy's calculation of claimant's cash wage as $46.66 per week. This weekly wage, based on $200.00 per month, should be $46.15 per week.
Consequently, the order of the Full Commission is quashed with the exception of the portion thereof which rectifies the two above-mentioned patent inadvertences in the Deputy's order.
It is so ordered.
TERRELL, Acting C.J., and DREW, THORNAL and HOBSON (Ret.), JJ., concur.
NOTES
[1] Johnson v. State, 157 Fla. 685, 27 So.2d 276, 282.
[2] To encourage the employer to employ the handicapped by relieving the former of the added burden cast upon him by Section 440.15(5) (d) (1), (2), (3).