GRIMES, Justice,
dissenting.
Subsection (1) of section 100.361, Florida Statutes (1987), provides that “[a]ny member of the governing body of a municipality ... may be removed from office by the electors of the municipality.” The balance of the statute sets forth the requirements and the procedures for recall. Subsection (9) states that “[t]he provisions of this act shall apply to cities ... which have adopted recall provisions.”
Subsection (9) does not limit the all-inclusive scope of subsection (1). Had the legislature wanted to restrict the application of section 100.361 in the manner interpreted by the majority opinion, it would have stated that the provisions of this act shall apply only to cities which have adopted recall provisions or, even more logically, it would have made this clear in the introductory provisions of the statute. To the contrary, subsection (8) of the statute states that “[i]t is the intent of the Legislature that the recall procedures provided in this act shall be uniform statewide.”
The title to chapter 74-130 later codified as section 100.361 provided, in part, that it was an act “authorizing and providing procedures for the recall of any member of the governing body of a municipality ... by the municipal ... electors_” (Emphasis supplied.) This language reflects a clear legislative intent that the statute operate in and of itself as authorization for the removal of members of the governing bodies of municipalities, which intent is clearly implemented by the language of subsection (1) of the statute.
At the very least, the statute is ambiguous, in which event it is proper to look to the purpose for which the statute was passed. Sunshine State News Co. v. State, 121 So.2d 705 (Fla. 3d DCA 1960). From a reading of the entire act, I believe it is evident that the legislature wished to adopt uniform recall procedures for all cities rather than simply for those cities which already had some kind of recall procedure. As the statute is interpreted by the majority, in those cities in which the recall procedures are contained in an ordinance, a city commission faced with the potential of a recall could simply repeal the ordinance and escape the recall. An ambiguity in a statute should be resolved by an interpretation that best serves the public interest. In re Ruff's Estate, 159 Fla. 777, 32 So.2d 840 (1947). It is my belief that subsection (9) was simply added to the statute to make it doubly clear that statewide *26 procedures applied even to those cities which already had recall provisions.
The views I express have prevailed in state government since the enactment of this statute. In opinion 075-242,[1] Attorney General Shevin addressed the effect of subsection (9), then subsection (11), as follows:
However, your letter questions whether a different conclusion is required by reason of subsection (11) of s. 100.361, F.S. (1974 Supp.) [s. 2 of Ch. 74-130, supra], which reads, in pertinent part: “The provisions of this act shall apply to cities ... which have adopted recall provisions.” It is my view that this last-quoted language does not change the conclusions hereinabove expressed respecting the intent and effect of subsection (1) of the statute. First it should be noted that the literal wording of subsection (11) does not conflict with the language of subsection (1). And while the language of subsection (11) encompasses a smaller universe than that engulfed by subsection (1), it does not do so in a restrictive manner, but rather in what appears to be an effort at further clarification of the broad scope included within subsection (1). The language of subsection (11) would become restrictive only if the word “only” — or a word of similar restrictive import — were to be inserted between “shall” and “apply,” but, as noted in In re Estate of Jeffcott, 186 So.2d 80 (2 D.C.A.Fla., 1966), “... a court will refuse to tack additional words on a statute in a situation where uncertainty prevails as to the legislature’s intent,” and a court may not “invoke a limitation or ... add words to the statute not placed there by the Legislature.” Chaffee v. Miami Transfer Company, Inc., 288 So.2d 209 (Fla.1974).
Opinion 077-09[2] of the Division of Elections is consistent with the majority opinion in this case. However, the following year, in opinion 78-48,[3] the Division of Elections expressly overruled and revoked its prior opinion, reasoning as follows:
[T]he better view is that this later provision supplements the intent language and makes it abundantly clear that even such cities and counties are governed by this statute’s provisions and not the charter provisions. To hold otherwise would reduce the statute’s use to just those cities and counties adopting recall procedures to the exclusion of all other municipalities. It seems unreasonable to assume that the legislature intended to overrule provisions previously adopted, but not subject other municipalities to recall procedures.
Thereafter, in opinion 079-38,[4] Attorney General Smith reiterated the view of his predecessor in analyzing the effect of subsection (9), then subsection (10), and stated:
Your letter suggests, however, that the terms of s. 100.361(10), F.S., compel a different conclusion. This subsection states: “The provisions of this act shall apply to cities and charter counties which have adopted recall provisions.” I do not believe that this subsection operates to negate the clear terms of subsection (1). The language of subsection (10) is not on its face inconsistent with that of subsection (1); even if such a conflict did exist, the rule of construction is to interpret a statute to effectuate rather than defeat the clear purpose of the Legislature. This principle is amplified by the well established rule providing that when the last sentence in one section of a statute is plainly inconsistent with preceding sentences of the same section and preceding sections, which conform to the Legislature’s obvious policy and intent, such last sentence, if operative at all, must be so construed as to give it effect consistent with such other sections and parts of sections and with the policy they indicate. Sharer v. Hotel Corp. of America, 144 So.2d 813 (Fla.1962); State ex rel. Johnston v. Bessenger [155 Fla. 730] 21 *27 So.2d 343 (Fla.1945); and Hall v. State [39 Fla. 637] 23 So. 119 (Fla.1897). This rule constitutes an exception to the general rule that the last expression of the legislative will is the law, and, in the case of conflicting provisions in the same statute or different statutes, the last in point of time or order of arrangement prevails. Compare State v. City of Boca Raton, 172 So.2d 230 (Fla.1965), and State v. City of Hialeah, 109 So.2d 368 (Fla.1959), with Johnson v. State [157 Fla. 685] 27 So.2d 276 (Fla.1946), cert. denied, 329 U.S. 799 [67 S.Ct. 491, 91 L.Ed. 683] (1947).
The administrative construction of a statute by an agency or body charged with its administration “is entitled to great weight and will not be overturned unless clearly erroneous.” State ex rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823, 828 (Fla.1973). Moreover, section 100.361 has been amended five times, yet there has been no change in those portions of the statute relating to its applicability. Had the legislature disagreed with the official interpretation of the attorney general and Division of Elections, it would have been a simple matter to amend the statute.
I respectfully dissent.
SHAW, J., concurs.

. 1975 Op. Att’y Gen. Fla. 075-242 (Aug. 28, 1975).

. 077-09 Fla. Op. Div. of Elections (Mar. 8, 1977).

. 78-48 Fla. Op. Div. of Elections (Nov. 6, 1978).

. 1979 Op. Att’y Gen. Fla. 079-38 (Apr. 18, 1979).